JUILLARD *v.* MAGONE, Collector.

*(Circuit Court, S. D. New York.* February 5, 1889.)

1. CUSTOMS DUTIES—WOOL-TOPS.
    Schedule K, tariff act of March 3, 1883, (Heyl, Imp. D. 356,) imposing a double duty upon "wool of the sheep  *  *  *  imported in any other than ordinary condition, as now and heretofore practiced," etc., *held* not to be restricted to wool changed in its character or condition for the purpose of evading the duty, nor to wool reduced in value by the admixture of dirt or any other foreign substance, but to cover also wool advanced or improved beyond such "ordinary condition."

2. SAME.
    "Wool-tops," which are wool advanced to an improved condition over ordinary "scoured wool," by the further processes of combing, gilling, and winding into balls, found to be "wool imported in other than ordinary condition," and liable to the double duty under Schedule K, (Heyl, Imp. D. 356*b*.)

At Law. Action to recover customs duties.

The plaintiff's firm of A. D. Juillard & Co., of the city of New York, on the 5th day of June, 1886, imported into the port of New York from Liverpool, by the steamer Republic, three cases of "scoured wool-tops," as described in their entry and invoice. The wool in suit belonged to class 2, the value whereof at the last port or place whence exported to the United States, excluding charges in such port, was less than 30 cents per pound. The duty upon wools of the second class, of the value of less than 30 cents per pound, is 10 cents per pound, under Schedule K

(Heyl, Imp. D. 358a.) This wool had been concededly scoured. Schedule K, (Id. 356a) provides that "the duty on wools of all classes, which shall be imported scoured, shall be three times the duty to which they would be subjected if imported unwashed." The same schedule (Id. 356b) also provides that "the duty upon wool of the sheep * * * which shall be imported in any other than ordinary condition as now and heretofore practiced, or which shall be changed in its character or condition for the purpose of evading the duty, or which shall be reduced in value by the admixture of dirt or any other foreign substance, shall be twice the duty to which it would be otherwise subject." The double duty of 60 cents per pound was assessed upon this merchandise by the collector by virtue of the last clause above mentioned, and under the claim that the merchandise in suit was scoured wool, imported "in other than ordinary condition." The plaintiffs duly protested, appealed, and brought this suit, to recover the alleged excess of duty between 60 cents and 30 cents per pound, and for the determination of the question whether scoured wool-tops are dutiable at 30 cents per pound as scoured wool, or at 60 cents per pound as wool imported "in other than ordinary condition," under the provisions of the tariff act of 1883 above quoted. It was contended by the plaintiffs that the clause in paragraph 356 (Heyl, Imp. D.) "imported in any other than ordinary condition as now and heretofore practiced" was intended by congress to refer to some degradation, and not to any improvement, of the merchandise. On the part of the defendant it was claimed that the language of said paragraph covered any other than ordinary condition of wool as then or theretofore imported, whether such condition were a degraded or an improved condition. It was shown upon the trial that wool-tops were something more than scoured wool in its ordinary condition. To make wool-tops the wool in the bale is sorted, then scoured, then dried over a drying-machine, then put through the carding-engine, and then through the back-washing machine, which further cleanses it, oils it, and brings the fibers parallel to each other. After that, it is wound into balls, and these balls are placed in the combing-machine. The combing-machine takes the short fibers out, and also all foreign substances, such as vegetable matter. The refuse part is called the "noil," and the perfect part, after it comes from the comb, is a "sliver." Then it is gilled, and wound into balls, which are known as "wool-tops" in trade and commerce. In average wool about 35 pounds of tops are produced out of 100 pounds of wool, which is the shrinkage in weight from the wool as it comes in the bale to the completed article of wool-tops, and there is a corresponding increase in the value of the article.

·Butler, Stillman & Hubbard, (A. H. Joline, of counsel,) for plaintiffs.

Stephen A. Walker, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty., for defendant.

LACOMBE, J., (orally, after stating the facts as above.) This case calls for the interpretation of paragraph 356, (Heyl, Imp. D.,) Schedule K, of the tariff act of 1883. It reads as follows:

"(*a*) The duty on wools of the first class which shall be imported washed shall be twice the amount of the duty to which they would be subjected if imported unwashed; and the duty on wools of all classes which shall be imported scoured shall be three times the duty to which they would be subjected if imported unwashed.

"(*b*) The duty upon wool of the sheep, or hair of the alpaca goat, and other like animals, which shall be imported in any other than ordinary condition, as now and heretofore practiced, or which shall be changed in its character or condition for the purpose of evading the duty, or which shall be reduced in value by the admixture of dirt or any other foreign substance, shall be twice the duty to which it would be otherwise subject."

The proviso here is grammatically separated into three subdivisions by the repetition of the word "which," preceded by the word "or," and should therefore be construed as covering three distinct categories, viz.: (*a*) Wool imported in any other than the ordinary condition, as practiced prior to the passage of the act of 1883; (*b*) wool changed in character or condition for the purpose of evading the duty; (*c*) wool reduced in value by the admixture of dirt or other foreign substance. As to the operation of the words "for the purpose of evading the duty," it is no doubt the rule, as contended for by plaintiff's counsel, that where there are several clauses separated by commas, and a general clause after all, the last and general one applies to all the preceding clauses; but the important feature in this case is that by the repetition of the word "which" the subject is introduced separately into each clause. Thus each clause is complete in itself, containing both subject and predicate. That circumstance seems to me controlling of the interpretation It looks as if congress had been careful to choose and repeat words in order to indicate the divisions between the three classes it was providing for. The repetition of words is a more important circumstance than the presence of the comma. More attention is paid to the use of words than to the use of punctuation marks. There is only a single question for the jury, which I shall leave to them as a specific question.

The court then charged the jury as follows:

I propose to leave to you but a single question, which I will hand to you in writing, and to which you will return the answer "Yes" or "No." As you have gathered from the arguments here, congress has prescribed rates of duty with regard to wools of three classes: (1) Clothing wools; (2) combing wools; (3) carpet wools. As to the first and second classes the rate of duty is the same. The provisions with regard to the duty on wools are, in the first place, that they shall pay, if the value is 30 cents or less per pound, 10 cents per pound; that if washed, they shall pay twice that; and if scoured, they shall pay three times that. These wools concededly are scoured, and therefore were assessed at 30 cents per pound on that account. Then the act goes further, and provides that "the duty upon wool which shall be imported in any other than ordinary condition, as now and heretofore practiced, [and that means as practiced on the 3d of March, 1883, when the act was passed, and prior

thereto,] shall be twice the duty to which it would be otherwise subject." When this particular importation arrived, the collector determined that it made its appearance in a condition other than the ordinary condition in which wool which had been scoured was imported prior to March 3, 1883; and he therefore doubled the duty, and has collected 60 cents per pound. The question which I shall leave to you is whether the importation of wool in the condition of wool-tops (as represented by this sample of the importation) was an ordinary practice prior to March 3, 1883. On that question, upon the part of the plaintiffs, there is the evidence of one witness that he knew of a single importation at the port of Boston. Of course, one importation does not make a practice. There is also the evidence of another witness called by the plaintiff, as to whose testimony I shall have to trust to your recollection (the stenographer's notes do not agree with my own on that point) whether it was in response to a question if he knew of any importation, or if he knew of any importations. Your own recollection as to that question must guide you in determining what his testimony amounted to. It was of the very briefest character; and the mere answer "Yes" to the question so put to him gave no details whatever. On the other hand, the defendant called a number of witnesses, who were large dealers in wool, and who testified (as you will recollect) that they did not know of any importations of wool-tops into this country prior to March, 1883, except, as one or two of them said, in a single specific instance. I think that one of these witnesses testified as to one importation into the port of Boston, which was probably the same importation to which the plaintiff's witness referred. This, then, is the only question I shall leave to you: "Whether the importation of wool in the condition of wool-tops was an ordinary practice prior to March 3d, 1883."

Upon coming into court they rendered the following verdict: "No." Upon that answer to this question the court directed a verdict for defendant.